<u>NOT FOR PUBLICATION</u>                                                          <u>CLOSED</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THADDEUS THOMAS, et. al, | : | |
| Plaintiffs, | : | Civil Action No. 12-6379 (SRC) |
| v. | : | |
| STEVE JOHNSON, et al., | : | **OPINION** |
| Defendants. | : | **APPLIES TO ALL ACTIONS** |
| THADDEUS THOMAS, | : | |
| Plaintiff, | : | Civil Action No. 13-2429 (SRC) |
| v. | : | |
| SC/O A. WARE-COOPER, et al., | : | |
| Defendants. | : | |
| THADDEUS THOMAS, | : | |
| Plaintiff, | : | Civil Action No. 13-3799 (SRC) |
| v. | : | |
| MARK SINGER, et al., | : | |
| Defendants. | : | |

continued …

... continued

| | |
|---|---|
| THADDEUS THOMAS,<br><br>    Plaintiff,<br><br>v.<br><br>SGT. L. HASKINS, et al.,<br><br>    Defendants. | Civil Action No. 13-5501 (SRC) |
| THADDEUS THOMAS, et al.,<br><br>    Plaintiff,<br><br>v.<br><br>TRACEY S. KAMINSKI, et al.,<br><br>    Defendants. | ✓ Civil Action No. 14-2328 (SRC) |
| RONALD BARBER,<br><br>    Plaintiff,<br><br>v.<br><br>BRUCE DAVIS, et al.,<br><br>    Defendants. | Civil Action No. 13-2817 (SRC) |
| RAFIEEK GRAHAM,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY S. CHIESA, et al.,<br><br>    Defendants. | Civil Action No. 13-3801 (SRC) |

continued ...

... continued

| | |
|---|---|
| WILLIAM PALMER, | |
| Plaintiff, | Civil Action No. 13-3863 (SRC) |
| v. | |
| MARK SINGER, et al., | |
| Defendants. | |
| RAYMOND ALVES, et al., | |
| Plaintiff, | Civil Action No. 13-3894 (SRC) |
| v. | |
| BRUCE DAVIS, et al., | |
| Defendants. | |
| JIHAD WILLIAMSON, | |
| Plaintiff, | Civil Action No. 14-2740 (SRC) |
| v. | |
| SHANTAY ADAMS, et al., | |
| Defendants. | |

**CHESLER, District Judge:**

These ten actions are before the Court upon Plaintiffs' submissions of civil rights complaints. Many of the complaints list the same individuals as plaintiffs and raise a multitude of identical challenges. The bulk of these complaints were followed by supplements, letters and

addenda.[1] For the reasons detailed infra, Plaintiffs' applications for joinder will be denied as to those actions where joinder is sought, and all pleadings will be dismissed without prejudice to Plaintiffs filing their amended complaints in compliance with the requirements of Article III of the United States Constitution and Rules 8, 15, 18 and 20 of the Federal Rules of Civil Procedure.[2] Additionally, one submission suggests that mailings from the Clerk's office are being returned as undeliverable because prison officials are falsely stating that Plaintiffs are no longer confined, or that the addresses used by the Clerk contains errors preventing delivery of Plaintiffs' mail. Thus, the Court will Order the Clerk to notify the Office of the Attorney General and verify the Plaintiffs' mailing addresses to ensure Plaintiffs' ability to duly litigate their legal actions.

## I. BACKGROUND

Plaintiffs are civilly committed sexually violent predators ("SVPs") confined and treated at a Special Treatment Unit ("STU") of the East Jersey State Prison ("EJSP") under the New Jersey Sexually Violent Predator Act ("NJSVPA"), N.J. Stat. Ann. § 30:4-27.24. See Alves v. Main, No. 01-789 ("Alves-I"), 2012 U.S. Dist. LEXIS 171773, at *10-11 (D.N.J. Dec. 4, 2012). Prior to being confined at the EJSP, the SVPs were confined at a Kearny facility. See County of Hudson v. State Dep't of Corr., 2009 N.J. Super. Unpub. LEXIS 1188, at *2-4 (N.J. Super. Ct. App. Div. Apr. 22, 2009). When, on September 22, 2000, then-Governor Christine Todd Whitman invoked her emergency powers to designate that Kearny facility as the SVPs' place of temporary housing, see id., one SVP commenced a civil action challenging the mode and sufficiency of the mental treatment at Kearny. See Alves-I, 2012 U.S. Dist. LEXIS 171773, at 8,

---

[1] Many complaints arrived unaccompanied by the applicable filing fees or proper in forma pauperis applications.

[2] The Clerk will be directed to commence new matters for improperly joined Plaintiffs to facilitate litigation of their individual claims, if desired.

4

15-16. By 2005, "approximately 30 additional cases [of the same nature] were consolidated" with Alves-I. See id. at *17, 26-27. Half a decade later, a state court ordered the SVPs' transfer out of Kearny, resulting in their relocation to the EJSP on March 17, 2010. See Hudson, 2009 N.J. Super. Unpub. LEXIS 1188, at *5. At that point, many SVPs commenced other civil actions seeking transfer out of the EJSP on due process grounds. See, e.g., Thomas v. Christie ("Thomas-I"), No. 10-1887, 2010 U.S. Dist. LEXIS 109983 (D.N.J. Oct. 15, 2010). All such due process claims were dismissed as meritless. See id. at *12-15 (relying on United States v. Comstock, 560 U.S. 126 (2010); Seling v. Young, 531 U.S. 250, 261-62 (2001); Kansas v. Hendricks, 521 U.S. 346 (1997); In re Commitment of W.Z., 173 N.J. 109 (2002)). By 2012, the SVPs amended the claims consolidated with Alves-I by adding challenges to the mode and sufficiency of their mental treatment at the EJSP. See Alves v. Main, 2014 U.S. App. LEXIS 5234, at *3-4 (3d Cir. Mar. 20, 2014). Because of the volume of cases filed that raised these new challenges, a class was certified and all claims were settled. See id. at *4.[3] By then, however, the SVPs had commenced additional civil suits raising a broad range of allegations that included, inter alia, the already-dismissed due process claims and already settled attacks on the mode and sufficiency of mental treatment at the EJSP.[4] Ten of these actions are now before this Court.

The first one was commenced by Thaddeus Thomas ("Thomas") and named Ronald Barber ("Barber"), Raymond Alves ("Alves"), Rafieek Graham ("Graham") and Jhon Sanchez ("Sanchez") as Thomas' co-plaintiffs. See Thomas v. Johnson ("Thomas-II"), Civil Action No. 12-6279. The complaint in Thomas-II arrived accompanied only by Thomas' in forma pauperis

---

[3] The SVPs challenged the settlement claiming that the mental treatment envisioned under the settlement was constitutionally deficient. See Alves, 2014 U.S. App. LEXIS 5234, at *5. The Court of Appeals disagreed and affirmed the settlement. See id. at *8-13.

[4] The settlement included a clause allowing the SVPs to resume litigation as to those provisions which the State failed to implement. See Alves, 2014 U.S. App. LEXIS 5234, at *10-11.

("IFP") application and, upon naming various Department of Corrections ("DOC") supervising officials as defendants, asserted that (1) the general prison population at the ESJP suffered from a bed bug infestation, (2) and the EJSP officials' failed to separate the SVPs from the general prison population causing the spread of infestation to the STU. See id. ECF No. 1. After this Court denied the Thomas-II Plaintiffs IFP status without prejudice, Thomas filed a letter asserting that SVPs were suffering from a bed-bug rush due to having their clothes washed in the laundry machines used for the general prison population. See id. ECF Nos. 5 and 6.[5]

Thomas' next civil action was commenced individually. See Thomas v. Ware-Cooper ("Thomas-III"), Civil Action No. 13-2429. There, Thomas alleged that his cell was repeatedly searched in retaliation for filing administrative grievances; Thomas also named various prison officials as defendants on the basis of their failure to respond to his grievances or because of their audible laughter at his grievances. See id. ECF No. 1. After submitting that complaint, Thomas filed fifteen addenda and letters, totaling 260 pages. See ECF Nos. 2 to 16. These submissions contained numerous allegations, including (1) that Thomas declined to attend group treatments out of fear of potential harassment; (2) that his personal possessions were being taken; (3) that he was denied individualized mental treatment; (4) that broken toilets in some cells caused feces to flow out into the STU public area; (5) that he was frustrated with the medical staff's inability to improve the SVPs' living conditions; (6) that some SVPs were physically hurt by officers; and (7) that the prison officers were rude. See id.

In his next action, also commenced individually, Thomas requested transfer out of the EJSP. See Thomas v. Singer ("Thomas-IV"), Civil Action No. 13-3799, ECF No. 1. Thomas' letter and addendum filed in Thomas-IV asserted that the SVPs' mental therapy sessions were

---

[5] Barber, Alves, Graham and Sanchez did not make any later submissions in Thomas-II.

not as successful as they could have been due to frequent interruptions by prison officials. See id., ECF No. 2. Thomas' complaint in Thomas v. Haskins ("Thomas-V"), Civil Action No. 13-5501, reiterated his claim that his rights were violated by failure to investigate and respond to his grievances. See id. ECF No. 1. That complaint was followed by letters and addenda (over 100 pages worth) reiterating, among other things, that his personal belongings were taken and asserting, among other things, that Thomas was being briefly locked in a cell on numerous occasions and that the prison officers formed unfavorable personal opinions about him and recommended other SVPs not to befriend him. See ECF Nos. 2 to 5.

Thomas' latest complaint, Thomas v. Kaminski ("Thomas-VI"), Civil Action No. 14-2328, named Robert Bond ("Bond") and Graham as his co-plaintiffs, but arrived accompanied only by a single IFP form.[6] See id. ECF No. 1. The complaint asserted that the SVPs' mental health treatments were often cancelled as a result of lock-downs and hypothesized that prison officials were using the STU funds for their personal needs. See id. The complaint was followed by letters and addenda asserting, inter alia, that mail from the Court to the SVPs was being returned as undeliverable because prison officials were falsely stating that the mailing addresses used by the Court were incorrect and thus prevented delivery. See id. ECF No. 4, 5 and 6.[7]

Since the complaint in Thomas-II named Alves as one of Thomas' co-plaintiffs, Alves reciprocated by submitting a complaint naming Thomas, Graham and Jamar Burney as Alves' co-plaintiffs. See Alves v. Davis ("Alves-II"), Civil Action No. 13-3894, ECF No. 1. As in

---

[6] As this Court explained in Thomas-II, each plaintiff must submit his individual complete IFP application, regardless of whether or not the submitted complaint seeks joinder of plaintiffs.

[7] The docket in Thomas-VI lends support to this allegation. See Thomas-VI, ECF Nos. 2 and 3 (indicating that the Clerk's mailings were returned as undeliverable even though these mailings utilized the very same address that resulted in proper delivery for the purposes of Thomas-II).

Thomas-VI, that complaint arrived accompanied only by a single IFP form. See id. ECF No. 1-1. The Alves-II complaint named supervising officials as defendants and asserted that the SVPs' grievances were being ignored, that the prison officers were harassing the SVPs and taking their personal belongings, and that the SVPs were displeased with: (a) the SHU environment; and (b) the fact that their legal and personal mail was routed through two prison facilities thus "hiding the fact . . . of [them] being civilly committed," i.e., not serving prison terms. Id. at 3-10. That 35-page complaint was followed by over 100 pages of letters and addenda replicating the latest SHU "Resident Guide" and indicating, among other things, the SVPs' displeasure with their inability to receive food brought in by family members during the visitation hours or enjoy cigarettes or tobacco at the SHU (since the STU is a smoke-free facility). See ECF No. 2; see also id., ECF No. 3 (also hypothesizing that certain recent penal law changes as to sentencing of repeated sex offenders might, hypothetically, be utilized to negatively affect the SVPs' chances for release).

Meanwhile, Barber and Graham, i.e, Thomas and Alves' co-plaintiffs in Thomas-II, Thomas-VI and Alves-II, also submitted their civil complaints. See Barber v. Davis ("Barber"), Civil Action No. 13-2817, and Graham v. Chiesa ("Graham"), Civil Action No. 13-3801. Barber's complaint was followed by over 100 pages of letters and addenda, see Barber, ECF Nos. 2 to 6, and Graham's complaint was followed by a 15-page addendum. See Graham, ECF No. 2. Barber's complaint named supervising officers as defendants on the basis of, e.g., those officers' smiles in response to Barber's critique of the SHU staff, and asserted that the officers were "harassing," "retaliating" against and "threatening" him, and repeatedly searching his cell. See Barber, ECF No. 1, at 7-8 (stating that officers said that "[Barber is] lucky now soon [his] time will be up, and [he is] next" and expressed unfavorable opinions about Barber to other

8

SVPs, causing Barber "complications with [his] job status"). Barber's post-pleading submissions alleged that Jamar Burney ("Burney," another SVP) witnessed an argument between two officers and two SVPs that led to an altercation between them. See id. ECF No. 2; see also id. ECF Nos. 3- 6 (suggesting that Barber was placed in administrative segregation as "retaliation" after Barber learned that Burney witnessed the alleged incident).

Meanwhile, Graham's complaint requested transfer out of the EJSP and asserted that the mental health treatment provided at the SHU was insufficient. See Graham, ECF No. 1. His post-pleading submission alleged that his right to mental treatment was being violated because he had not been provided with institutional employment during the past three years. See id. ECF No. 2.

The two most recent actions were commenced by William Palmer ("Palmer"), see Palmer v. Singer ("Palmer"), Civil Action No. 13-3863, and Jihad Williamson ("Williamson"). See Williamson v. Adams ("Williamson"), Civil Action No. 14-2740. Palmer's complaint and accompanying submissions sought transfer out of the EJSP on the grounds of inadequate mental health treatment and asserted that the SHU environment was insufficiently therapeutic for the purposes of the so-called the New Jersey Patient's Bill of Rights., N.J. Stat. Ann. § 30:4-24.2. See Palmer, ECF Nos. 1-2 and 1-3. Williamson's complaint and supplement named supervising officials as defendants and asserted that the rights of various SVPs were violated by the SHU's quasi-prison conditions, frequent lock-downs and the supervisors' failures to investigate the SVPs' grievances. See Williamson, ECF Nos. 1 and 1-1.

All Plaintiffs' submissions are procedurally and substantively deficient.

## II.    PROCEDURAL DEFICIENCES

Each Plaintiff is without standing to litigate jus tertii claims on behalves of *other* SVPs.

Standing is granted to third persons only to pursue claims on behalf of those unable to litigate on their own. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990); see also Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 102-03 and n. 5 (1998).[8] As evidenced by Plaintiffs' copious submissions, that is not the case here. In addition, Plaintiffs' complaints, supplements, addenda and letters, violate the Rules of Civil Procedure.

A plaintiff can amend his complaint as of right only once, and only within a certain period of time.[9] To re-amend, he must seek leave of the court, see Fed. R. Civ. P. 15(a)(2), by filing a motion to amend with a proposed amended complaint that would fully supersede his original pleading.[10] He cannot file letters or addenda, or documents designated as "supplements."[11]

Moreover, every complaint, original or amended, must comply with Rules 8, 18 and 20. Under Rule 8, the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[12] Also, since Rules 18 and 20 limit the joinder

---

[8] Plaintiffs' amended pleadings, if filed, should raise only the claims personally held by each Plaintiff.

[9] See Fed. R. Civ. P. 15(a); Zizic v. Q2Administrators, LLC, 728 F.3d 228, 242 (3d Cir. 2013); see also Jones v. Bock, 549 U.S. 199, 200 (2007) (the Rule equally applies before and after sua sponte screening); Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1022 (7th Cir. 2013) (the Rule applies to represented and pro se plaintiffs, including those proceeding in forma pauperis).

[10] See L. Civ. R. 7.1(f); see also Ruddy v. U.S. Postal Svc., 455 F. App'x 279, 283 (3d Cir. 2011); Pearson v. Varano, 2013 U.S. Dist. LEXIS 161027, at *2 (M.D. Pa. Nov. 12, 2013).

[11] See Fed. R. Civ. P. 15(d); see also Crosby v. Piazza, 465 F. App'x 168, 174 (3d Cir. 2012); Jones v. Hollenback, 2008 U.S. Dist. LEXIS 22227, at *40 (E.D. Cal. Mar. 18, 2008) ("[Such] practice . . . creates a moving target [and] necessar[ily] burdens . . . an overtaxed court"). All addenda, "supplements," letters and other improperly filed documents are stricken from the docket. See, e.g., Campbell v. Soc. Sec. Admin., 446 F. App'x 477, 481-82 (3d Cir. 2011).

[12] Even a pauper pro se plaintiff cannot file a diary in lieu of a complaint: any exceedingly voluminous or otherwise incomprehensible pleading will be dismissed. See, e.g., Rogers v.

of claims and defendants, see Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil §1655 (3d ed. 1998), transactionally-"[u]nrelated claims against different defendants belong in different suits." George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).

Hence, each Plaintiff will be allowed an opportunity to file *one* amended complaint operating as a superseding pleading and stating, *clearly and concisely*, his allegations as to a particular transaction or *related* series of transactions.[13] Such allegations cannot consist of conclusory statements, since "a complaint must do more than allege the plaintiff's entitlement to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Instead, it must "show" his entitlement by alleging actual facts. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).[14]

In addition, Plaintiffs cannot re-litigate the claims already dismissed or settled in prior actions. The doctrine of res judicata precludes claims that were disposed of on the merits or could have been litigated during a prior proceeding between the parties. See R & J Holding Co.

---

Morrice, 2013 U.S. Dist. LEXIS 11595, at *3-4 (D.N.J. Jan. 28, 2013); Melleady v. Blake, 2011 U.S. Dist. LEXIS 144834 (D.N.J. Dec. 15, 2011).

[13] See Fed. R. Civ. P. 8(a) and (e); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (the complaint must be simple, concise, direct and set forth "a short and plain statement of the claim showing that the pleader is entitled to relief"); cf. McNeil v. United States, 508 U.S. 106, 113 (1993) (rules in civil litigation do not excuse mistakes by those who proceed pro se); Lindell v. Houser, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006) ("District courts should not have to read and decipher tomes disguised as pleadings").

[14] Thus, Plaintiffs' amended complaints, if filed, should not allege speculation or hypothetical facts. See Iqbal, 556 U.S. at 678; see also U.S. Const. art. III, § 2, cl. 1; accord Walker v. Roman, No. 14-1182, 2014 U.S. Dist. LEXIS 25638, at *5 (D.N.J. Feb. 27, 2014) ("[an] application . . . is speculative [if] it relies on a hypothetical future retaliation"); Dawson v. Frias, No. 09-6050, 2010 U.S. Dist. LEXIS 30513 at *8 (D.N.J. Mar. 30, 2010) ("speculation as to what might or might not happen in the future" cannot serve as a basis for a valid claim) (citing Rouse v. Pauliilo, No. 05-5157, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (dismissing speculative claim as to hypothetical future retaliation and citing Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)); Pilkey v. Lappin, No. 05-5314, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiff's [anxieties] fail to state a claim upon which relief may be granted").

v. Redevelopment Auth. of Cnty. of Montgomery, 670 F.3d 420, 427 (3d Cir. 2011). By the same token, federal courts bar attempts to commence "duplicative litigations" in order to "foster judicial economy" and "protect parties from 'the vexation of concurrent litigation over the same subject matter.'" Porter v. NationsCredit Consumer Disc. Co., 295 B.R. 529, 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003) (citing Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000), and quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)), Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991)).[15] Thus, no plaintiff can litigate different actions challenging the same subject matter. Furthermore, Plaintiffs cannot name individuals as defendants on the basis of supervisory positions.[16] "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Solan v. Ranck, 326 F. App'x 97, 100-01 (3d Cir. 2009), cert. denied, 558 U.S. 884 (2009) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), and citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)); see also Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").

Finally, the complaints naming different SVPs as plaintiffs fail to qualify for joinder. See Boretsky v. Governor of N.J., 433 F. App'x 73 (3d Cir. 2011). "Rule 20 permits several plaintiffs to join . . . an action if[:] (1) the claims by the plaintiffs . . . arise from the same transaction, occurrence, or series of transactions or occurrences[;] and (2) a question of law or

---

[15] Plaintiffs' amended complaints, if filed, should not re-raise already-dismissed due process requests for transfer or the already-settled claims attacking their mental treatment. Plaintiffs' claims challenging insufficiency of the treatment provided for under the Alves-I settlement agreement are barred, while their claims that the settlement agreement in that case is breached should be raised in Alves-I. See 2014 U.S. App. LEXIS 5234, at *10-11.

[16] Plaintiffs' amended complaints, if filed, must assert actual facts showing personal wrongful acts or inaction by each defendant named in the pleadings.

12

fact common to all plaintiffs . . . will arise in the action." Id. at 77 (citing Fed. R. Civ. P. 20(a)). Here, joinder will be denied since the complaints submitted in Thomas-II, Thomas-VI and Alves-II (and the numerous letters, "supplements" and addenda filed in those matters) raise a multitude of claims implicating unrelated transactions affecting different SVPs.[17]

### III. SUBSTANTIVE DEFICIENCES

The complaint in Thomas-II asserts that Thomas suffers of a bed-bug rash because the SVPs are not isolated from the general EJSP population, and the SVPs' clothes are washed in the laundry machines used for the general prison population. In this Circuit, the test in Bell v. Wolfish, 441 U.S. 520, 537 (1979), governs detainees' non-medical conditions of confinement claim, see Hubbard v. Taylor, 538 F.3d 229, 231-32 (3d Cir. 2008), while detainees' denial of medical care claims are governed by Bell's due process standard, which is at least as protective as the deliberate indifference standard of the Eighth Amendment.[18] See A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 584 (3d Cir. 2004); County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998). A due process violation of the Fourteenth Amendment occurs when the conditions of confinement amount to punishment imposed without an adjudication of guilt. See Bell, 441 U.S. at 537.[19]

---

[17] Since this Court cannot rule out that Plaintiffs named in Thomas-II, Thomas-VI and Alves-II might have wished to challenge a number of different transactions, in light of Rules 18 and 20, the Court will reserve Thomas-II, Thomas-VI and Alves-II for the first Plaintiff named there and will direct the Clerk to commence new matters for the other Plaintiffs named in those matters.

[18] This Court realizes that Plaintiffs are displeased with many aspects of their confinement and would prefer to equate themselves to hospital-treated civilians. However, Plaintiffs' legal rights are largely identical to those of confined pretrial or alien detainees.

[19] The test contains both objective and subjective components: the former requires an inquiry into whether the deprivation was sufficiently serious, while the latter asks whether the officials acted with a sufficiently culpable state of mind. See Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). A "measure amounts to punishment when there is a showing of express intent to punish on the part of the detention facility officials, [and, in addition] when the restriction or

Thomas' allegations are void of facts showing that the officers either ignored the bed-bug infestation at the SHU or denied him medical treatment for bed-bug bites. As such, Thomas' displeasure with the interactions between the SVPs and EJSP general population (or with officers' use of the same laundry machines) is not actionable – there are no facts indicating the officers acted with a culpable state of mind, and it appears the joint operations of the SHU and EJSP (including the use of common laundry machines) serve legitimate penological goals of prison administration and prison economy.[20] The allegations in Thomas' remaining actions analogously fail to state a claim of constitutional magnitude. The United States Constitution does not confer upon an inmate the right to prison officers being polite and avoiding expletives, taunts, irritating laughter, cynical smiles, purely verbal threats, unflattering personal opinions, etc.[21] See Dawson v. NJ State Trooper Barracks, No. 11-2779, 2011 U.S. Dist. LEXIS 92922 (D.N.J. Aug. 19, 2011) ("Plaintiff asserts not a constitutional deprivation but acts that might qualify only as ethically unpalatable. . . . [T]he Officers' conduct, . . . while not commendable, cannot reach the level of a violation of constitutional magnitude: 'the Constitution is not a manual of etiquette'" (quoting King v. Lienemann, No. 11-0130, 2011 U.S. Dist. LEXIS 21968, at *16 (S.D. Ill. Mar. 4, 2011))); accord Shabazz v. Cole, 69 F. Supp. 2d 177, 200-01 (D. Mass.

---

condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." Id.. The excessiveness factor is determined in light of the totality of the circumstances. See Hubbard, 538 F.3d at 233.

[20] Cf. Glenn v. Hayman, No. 07-112, 2007 U.S. Dist. LEXIS 20092 (D.N.J. Mar. 20, 2007) ("Plaintiffs contention that [they] constitutionally deserve accommodations better than those provided to other state inmates has a disturbing Orwellian implication that Plaintiffs are 'more equal than others' . . . . [A]n inmate cannot become entitled to private quarters . . . by [having a criminal record containing] a violent sexual assault").

[21] Analogously, Thomas' witnessing of feces floating into the common area cannot qualify as punishment (unless he details the injury *he* suffered as a result of the broken toilets in other cells) and his brief placements in a solitary cell cannot qualify as punishment (unless he details the circumstances under which such placements occurred meeting the Stevenson-Hubbard tests).

1999) (collecting cases) (verbal harassment or verbal threats cannot violate inmate's rights under the Fourteenth Amendment).

Also, there is no right to compel an investigation of – or response to – an inmate's grievance, since "the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997).[22] Moreover, constitutional claims based on the officers' illegal taking of the SVPs' personal belongings are barred by the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. 59:1, et seq., since the NJTCA provides all the process that is due. See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir.1983); Asquith v. Volunteers of America, 1 F. Supp. 2d 405, 419 (D.N.J. 1998).[23]

---

[22] A failure to respond to a grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 F. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)). In the same vein, "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [a grievance]." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); Minnesota State Bd. Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment . . . suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications"). While Thomas appears to believe that his First Amendment rights are violated by the officers' false statements that the Clerk's mailings cannot be delivered, Thomas errs. "Under the First and Fourteenth Amendments, [inmates] retain a right of access to the courts." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)). However, to recover, they "must show (1) that they suffered an 'actual injury' [i.e.,] that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Id. (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002), emphasis supplied). To satisfy this pleading requirement, "[t]he complaint must describe the underlying [lost] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id. at 205-06 (footnote and citation omitted). Here, Thomas has not lost any claim as a result of the officers' alleged false statements that the Clerk's mailings cannot be delivered to him. Thus, he cannot mount a viable access claim. However, since his ability to meaningfully litigate his actions might be obstructed by such practice, if it is actually in place, this Court will direct the Attorney General to ensure each Plaintiff's ability to litigate by furnishing the Clerk with each Plaintiff's exact mailing address in order to assure proper delivery of their legal mail.

[23] In addition, the NJTCA directs that a notice of claim be filed with the public entity not later than the ninetieth day after accrual of the underlying cause of action. See N.J. Stat. Ann. § 59:8-

15

Finally, the SVPs lack standing to litigate claims based on the officers' alleged use of the State's funds for the officers' personal benefit.

> Plaintiff has no standing to sue for such violation: this is so even if Plaintiff deems or designates himself as a third-party beneficiary of this contract. See Brown v. Sadowski, 2009 U.S. Dist. LEXIS 62718, at *13 (D.N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials") (relying on Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)); accord Glenn v. Hayman, 2007 U.S. Dist. LEXIS 20092, at *34 . . . (analogously relying on Anza for the observation that, "[s]ince the State of New Jersey was the allegedly defrauded party (and in no way designated Plaintiffs to litigate the alleged [fraud] claim on behalf of the State), Plaintiffs cannot bring this claim").

Maqbool v. Univeristy Hosp. of Medicine & Dentistry of New Jersey, No. 11-4592, 2012 U.S. Dist. LEXIS 81895, at * 4 (D.N.J. June 13, 2012) (quoting Parker v. Gateway Nu-Way Found., No. 10-2070, 2010 U.S. Dist. LEXIS 115116, at *14-15 (D.N.J. Oct. 26, 2010); see also Green v. Corzine, No. 09-1600, 2011 U.S. Dist. LEXIS 17173, at * 4 (D.N.J. Feb. 22, 2011).

As such, Thomas' complaints will be dismissed. He will be allowed an opportunity to file *one* amended complaint in each of his actions.[24] His amended challenges to conditions of his confinement should detail only non-hypothetical facts and, in addition, meet *both* objective and subjective components of the Bell test, as explained in Stevenson and Hubbard.[25] His First

---

8(a). Failure to file the required notice necessarily results in dismissal of a plaintiff's tort claims. See N.J. Stat. Ann. § 59:8-3.

[24] Each such amended pleading will *supersede all his prior filings*, and it shall strictly comply with the requirements of Article III and the Federal Rules of Civil Procedure.

[25] Thomas' amended medical deprivation claims, if raised, shall neither duplicate his claims currently litigated in Thomas-I not raise challenges settled in Alves-I (or challenges asserting breach of the Alves-I settlement by the prison officials).

Amendment retaliation claims shall detail only the relevant events and state their timeline to allow this Court to conduct intelligent and informed causation and firmness analyses.[26]

Alves' complaint will too be dismissed with leave to amend, provided that he submits a proper IFP and his amended complaint raises procedurally proper and legally cognizable claims.[27] Analogously, Barber's, Graham's, Palmer's and Williamson's complaints will be dismissed with leave to amend, provided that proper IFP applications are submitted there.[28]

---

[26] "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); see also Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-26 (3d Cir. 2000). To state a retaliation claim, a plaintiff must state facts demonstrating that: (a) he engaged in a constitutionally-protected activity; (b) he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (c) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser, 241 F.3d at 333 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). Thomas asserts that he was retaliated for filing grievances but omits to detail the time line establishing a correlation between the filings of grievances and particular retaliatory acts.

[27] Alves' allegations raised are, thus far, facially meritless. The fact that the SVPs' mailing addresses do not convey to the reader the SVPs' civilly committed status is not a severe deprivation that could qualify as punishment. The SVPs' displeasure with their environment is not a claim of constitutional magnitude, and claims based on hypothetical future uses of penal law violate the Article III requirements. The inability of some SVPs to smoke at the SHU does not amount to punishment, since the prohibition serves the SHU's legitimate goal of protecting other SVPs and officers from second-hand smoking. Analogously, the prohibition on receipt of food or packages from family members cannot qualify as punishment since it serves the SHU's legitimate goal of protecting the SVPs and officers from illegal contraband items.

[28] Barbers' harassment and verbal threats claims based on cynical smiles or comments of prison officers fail to state a claim, while his retaliation challenges fail to detail the relevant events and their time line. In addition, Barber's claims based on the events witnessed by Burney or the injuries suffered by other SVPs are deficient for lack of standing, while his allegations as to his disciplinary sanctions fail to detail the events of his disciplinary hearing, the process allowed during and prior to that hearing, the allegedly false evidence proffered against him, and the sanctions imposed. Graham's complaint raises a facially meritless challenge based on denial of employment. See Mimms v. U.N.I.C.O.R., 2010 U.S. Dist. LEXIS 20389 (D.N.J. Mar. 8, 2010) (inmates have no right to employment), aff'd, 386 F. App'x 32 (3d Cir. 2010); see also Bulger v. United States Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); James v. Quinlan, 866 F.2d 627 (3d Cir. 1989); Merola v. Department of Corrections, 285 N.J. Super. 501, 513 (N.J. Super. Ct. App. Div. 1995) (relying on Wolff v. McDonnell, 418 U.S. 539, 557 (1974), for the due process "work credit" analysis). Palmer has no due process right to transfer out of the SHU/EJSP, see

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' applications to proceed IFP will be granted solely in the matters where proper applications were submitted. The remaining IFP applications will be denied without prejudice. Plaintiffs' pleadings will be dismissed, and the applications for joinder will be denied. The Clerk will be directed to commence individual matters for improperly joined Plaintiffs. Each Plaintiff will be allowed an opportunity to file an amended complaint complying with the jurisdictional, procedural and substantive requirements detailed supra.

An appropriate Order follows.

/s Stanley R. Chesler
**STANLEY R. CHESLER**
**United States District Judge**

Dated: May 30th, 2014

---

Comstock, 560 U.S. 126; Seling, 531 U.S. 250; Hendricks, 521 U.S. 346, and his challenges based on state law fall outside this Court's jurisdiction unless he articulates a federal claim allowing supplemental jurisdiction. Williamson's challenges raised on behalves of other SVPs are subject to dismissal for lack of standing, and his claims asserting failure to investigate or reply to grievances are not cognizable. Williamson's claims asserting denial of the mental treatment due to him under the settlement reached in Alves-I should be raised in Alves-I.